# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re:

BILLY JACK SMITH, II,                              Case No. 11-81204

       Debtor.

## MEMORANDUM DECISION

This Chapter 13 case came before the Court on May 13, 2015, on the Court's Order of April 23, 2015. (Doc. 37). For the reasons set forth below, this case is dismissed, with prejudice pursuant to 11 U.S.C. § 349(a), and with a five-year injunction against refiling. In addition, the Court will enter an order to show cause addressed to the Debtor's lawyers ordering them to appear and show cause why sanctions should not be imposed.

## I. FACTS

On August 11, 2011, Billy Jack Smith, II, filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. (Doc. 1). In Schedule B, Smith reported a claim for a workmen's compensation claim for an "unknown" amount. (Doc. 1). On the day he filed his petition, Smith also filed a Chapter 13 Plan where he proposed to pay the sum of $227.00 bi-weekly for a period of 56 months. (Doc. 2). In addition to the $227.00 bi-weekly payments, Smith also promised the following:

> Any amount recovered in the Civil Suit, less allowable attorney
> fees and cost, [sic] over and above the exemptions allowed by the

> debtor(s) [sic] under Ala. Code Title 6-10-6 will be turned over the
> Chapter 13 Trustee to be paid into the plan."

(Doc. 2).

While one might quibble with grammar used in the Plan, it was nevertheless clear enough. The net proceeds of the workmen's compensation suit were to be paid to the Trustee for the benefit of the creditors. Smith amended his Plan on September 29, 2011, but the provisions relating to the workmen's compensation suit were unchanged. (Doc. 15). On November 18, 2011, the Court confirmed Smith's Amended Plan. (Doc. 20). Smith modified his plan, after confirmation, on January 12, 2012. (Doc. 23). The Court approved the modified plan by its order of February 7, 2012. (Doc. 24). Neither the amendment to the Plan, nor the post-confirmation modification, had any impact on the provision relating to the workman's compensation suit.

Smith had a total of six lawyers: two representing him in this bankruptcy case, and four others who represented him in his workmen's compensation case. The Court will refer to the first group as "bankruptcy counsel" and the second group as "litigation counsel." On March 10, 2015, the Trustee filed a Motion for Examination of Debtor's Transactions with his Lawyers and a Motion to Dismiss. (Docs. 31, 32). The Trustee recited in his motions that he had written Smith, or his lawyers, numerous letters inquiring about the lawsuit. (Doc. 31). Smith and his lawyers stonewalled the Trustee, ignoring most of his letters and providing no useful information when contact was made by the Trustee. Notwithstanding the Trustee's efforts to learn of the suit's disposition, he was not told that it was settled in January of 2015 and that $22,000 was

disbursed to Smith, with the lawyers retaining their share of the proceeds for attorney's fees. The Trustee did not learn of this disposition until after Smith had dissipated the proceeds.

The Court scheduled the Trustee's motions for hearing on April 8, 2015. The only appearance at that hearing was by Smith's lead bankruptcy counsel, who did not provide any useful information. The Trustee supplemented his motion to examine Debtor's transactions with lawyers on April 21, 2015. (Doc. 36). On April 23, 2015, the Court entered a four-page order advising that it may dismiss the case pursuant to 11 U.S.C. § 349(a), meaning that the Debtor may not discharge his debts in the future, and further with an injunction against refiling. (Doc. 37).

The Court called this case for hearing on May 13, 2015, pursuant to its April 23rd Order. Smith and all of his counsel were present. None of the lawyers gave an acceptable answer explaining their failure to provide the Chapter 13 Trustee with a timely and truthful response to his queries. Smith admitted that he received $22,000 in proceeds and testified that he has spent the money.

The result of all of this is that Smith converted the $22,000 proceeds from the litigation to his own use, contrary to the terms of his confirmed Chapter 13 Plan. The Court does not believe that Smith was candid with the Court concerning his actions or, for that matter, whether he has any money remaining. The Court finds that Smith was aware of his obligations under the Plan and willfully converted the litigation proceeds to his own use–contrary to the terms of his Chapter 13 Plan.

## II.  LAW

This Court has jurisdiction over this case and related proceedings pursuant to 28 U.S.C. § 1334(a) and (b).

### A.  Dismissal of this case is appropriate as the Debtor has committed a material default under his confirmed Chapter 13 Plan.

A Chapter 13 case may be dismissed for cause, including "material default by the debtor with respect to a term of a confirmed plan."  11 U.S.C. § 1307(c)(6); see also In re Elliott, No. 3:10-CV-1041-WKW, 2011 WL 744800, *2 (M.D. Ala. Feb. 25, 2011).  The Debtor's Plan called for him to pay the proceeds of his workmen's compensation suit to the Chapter 13 Trustee for the benefit of his creditors.  Instead he kept $22,000 in lawsuit proceeds for himself and spent them.  It is clear that this is a material default.  Dismissal is appropriate pursuant to 11 U.S.C. § 1307.

### B. The Court finds cause for dismissal with prejudice, meaning that debts in existence as of the date of the petition in this case will not discharge in any future bankruptcy case.

Having determined that dismissal is appropriate, the Court will consider whether this case is appropriate for what is sometimes called "dismissal with prejudice."

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title.

11 U.S.C. § 349(a); see also In re Russell, Case No. 12-80537, 2012 WL 5934648, *9 (Bankr. M.D. Ala. Nov. 27, 2012) (finding cause for dismissal with prejudice where debtor had nine previous bankruptcy filings and a history of dealing with creditors fraudulently); In re Kollar, 357 B.R. 657, 662 (Bankr. M.D. Fla. 2006) (finding cause for dismissal with prejudice where debtor had no ability to fund a plan and her purpose in filing was to thwart a secured creditor); In re Brown, 319 B.R. 691, 694 (Bankr. M.D. Ala. 2005) (finding cause for dismissal with prejudice where debtor had filed three cases in period of 24 months, with no payments to unsecured creditors); In re Sheila Jones, 289 B.R. 436, 440 (Bankr. M.D. Ala. 2003) (serial filing found to be in bad faith, supplying cause for dismissal with prejudice).

In the usual situation involving a dismissal, a debtor may file another bankruptcy case and, if he is otherwise entitled, discharge his debts. 11 U.S.C. § 349. On the contrary, in the case of dismissal with prejudice, any debt which is dischargeable in the case–that is any debt which was in existence as of the date of filing the petition–will not discharge in a future case.

The sanction of "dismissal with prejudice" is a serious one, not to be entered lightly or without sufficient cause.

That the Debtor converted $22,000 in funds which were property of the estate, and which had been pledged by the Debtor's Plan to be paid to creditors, is an egregious abuse of the protections of the Bankruptcy Code. The Court's records show that Smith has two prior bankruptcy filings. Smith filed a Chapter 7 petition on February 13, 1996, initiating case no. 96-641, where he received a Chapter 7 discharge. Smith filed a second Chapter 7 case on July 23, 2003, receiving a discharge on November 17, 2003. Case No. 03-81079. That Smith filed a second Chapter 7 petition a little more than a year after he was eligible for another Chapter 7 discharge is an aggressive use of the bankruptcy laws; the Court does not consider it, in and of itself, evidence of bad faith.[1] While Smith's aggressive use of the bankruptcy laws may not be bad faith in and of itself, Smith has, as we say in the Middle District, "been to the rodeo before." In other words a debtor who makes frequent use of the bankruptcy courts is expected to be more knowledgeable of his obligations than a naif who may truly be ignorant of the bankruptcy laws.

Smith is, or was at the time he filed, a police officer with the Columbus, Georgia police department. This is his third bankruptcy case. Yet Smith converted property of the estate–the settlement proceeds–to his own use, knowing they were pledged to creditors under his Plan. As a frequent bankruptcy filer and as a police officer, the Court expects Smith to have some acumen as to legal matters. He certainly should have known that when he converted the $22,000 in

---

[1] Under current law, a debtor may receive a Chapter 7 discharge only once every eight years. 11 U.S.C. § 727(a)(8). Prior to 2005, the law allowed a Chapter 7 discharge every six years.

-6-

lawsuit proceeds to his own use, he committed a fraud under the bankruptcy laws. 18 U.S.C. § 157. Moreover, his lawyers were all co-conspirators, with varying degrees of culpability.

The Court is more than a little chagrined with the performance of Smith's lawyers. The terms of the Chapter 13 Plan were simple enough. Why six lawyers could not, between them, discern what was required under the Plan is still a mystery. The Court will, by way of a separate order, require counsel to appear and show cause why sanctions should not be imposed. It may well be that not all of the lawyers are culpable. The Court will need an evidentiary hearing to sort that out.

Were Smith a little less knowledgeable, or had he seemed a little less clever at the hearing, the Court might have decided this differently. Smith offered to pay $700 at the hearing to make this all go away–calculating, incorrectly, that the Court may be willing to take something rather than nothing. The Court declined Smith's proposal. The Court does not believe Smith's testimony where he stated that all the money had been spent. No doubt all of the $227 bi-weekly payments had been made, but the Plan called for the lawsuit proceeds as well. While Smith's lawyers may well have to shoulder a share of the responsibility, the Court concludes that there is more than enough blame that is assignable Smith to dismiss his case with prejudice.

### C. A Five-year injunction against refiling is appropriate under the facts of this case.

Having determined that Smith's Chapter 13 case is to be dismissed with prejudice, the Court will consider whether an injunction against refiling is appropriate. To begin, the Court

-7-

Case 11-81204    Doc 43    Filed 07/16/15    Entered 07/16/15 16:17:37    Desc Main
Document      Page 7 of 12

notes that the Code provides, in this case, a 180-day injunction against refiling. 11 U.S.C. § 109(g)(1). Smith willfully violated the order confirming his Plan when he converted the lawsuit proceeds to his own use, rather than pay them over to the Trustee for the benefit of creditors. If the Court did nothing more than dismiss this Chapter 13 case, Smith would be ineligible to file bankruptcy for 180 days. In re Bradley, 152 B.R. 74, 76 (E.D. La. 1993); In re Wen Hua Xu, 386 B.R. 451, 455-56 (Bankr. S.D.N.Y. 2008).

It is well settled that a bankruptcy court may impose an injunction greater than the nonfiling period of 11 U.S.C. § 109(g)(1) where, as here, a debtor is abusing the protections of the Bankruptcy Code. In re Shields, 524 B.R. 769, 772 (Bankr. E.D. Tenn. 2015); In re Russell, Case No. 12-80537, 2012 WL 5934648 *9 (Bankr. M.D. Ala. Nov. 27, 2012); In re Oliver, 323 B.R. 769, 775 (Bankr. M.D. Ala. 2005); In re Brown, 319 B.R. 691, 694 (Bankr. M.D. Ala. 2005); In re Sheila Jones, 289 B.R. 436, 440-42 (Bankr. M.D. Ala. 2003).

In the case at bar, the Court is of the view that a five-year injunction against refiling, under any chapter, is appropriate due to the seriousness of the violation of the law. Smith converted $22,000, which he had pledged to pay to creditors. Smith had the benefit of the automatic stay for four years while he prosecuted his civil suit. Moreover, Smith stonewalled the Trustee's repeated requests for information. Timely and truthful responses no doubt would have thwarted his plan. Under these facts, a five-year injunction against refiling under any chapter of the Bankruptcy Code is appropriate.

**D. Smith's many lawyers appear to bear a share of the responsibility for the conversion of the $22,000 in proceeds; the Court will conduct a further hearing to determine if sanctions should be imposed and, if so, which lawyers should bear them.**

Having determined the Debtor's case should be dismissed, with prejudice and with a five-year injunction against refiling, the Court must next consider what should be done with the lawyers. The Court has broad discretion in supervising the conduct of lawyers who practice before it and their interactions with debtors. 11 U.S.C. §§ 329 and 330; see also Electro-Wire Products, Inc. v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 359-60 (11th Cir. 1994) (holding that law firm who represented debtor with an undisclosed conflict of interest must disgorge all fees paid); In re Jacqueline Jones, Case No. 10-32718, 2013 WL 1558088, *3 (Bankr. M.D. Ala. Apr. 12, 2013) (holding that the debtor's lawyer could be ordered to turn over lawsuit proceeds to the Trustee).

The Court is of the view that the Debtor is not the only one who is culpable here. The Court will consider imposing sanctions against the lawyers who represented the Debtor in this case and in the workmen's compensation case. The Court will, by way of a separate order, schedule an evidentiary hearing on the question of whether sanctions should be imposed against the lawyers and, if so, what the sanctions should be.

### III. PRACTICE POINTERS

Having found that Debtor's lawyers have not acted properly, the Court will provide guidance as to what counsel should have done. First, when a lawyer files a Plan that calls for litigation proceeds to be paid over to the estate, debtor's counsel must establish communications

Case 11-81204    Doc 43    Filed 07/16/15    Entered 07/16/15 16:17:37    Desc Main
Document      Page 9 of 12

with the lawyers who are handling the litigation. It is not appropriate for debtor's bankruptcy counsel to use the debtor as a "go-between" with litigation counsel. Much mischief can result from this. Bankruptcy counsel should communicate directly with litigation counsel, making them aware that their mutual client is in bankruptcy and that the proceeds of the suit are pledged to the Trustee for distribution for creditors. Due to the vagaries of human memory in matters such as this, the communication must be in writing. It would also be a good idea to copy the Chapter 13 Trustee.

In situations such as this, many counsel will opt to seek formal employment pursuant to 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure. In a Chapter 13 case the Debtor maintains control of his property, including his lawsuit, but by using the formal employment route, counsel may avoid a challenge to things such as the amount of his fee and whether any potential conflicts of interest have been disclosed. While courts differ on the question of whether a lawyer who represents a client who files a Chapter 13 petition must have his employment approved by the bankruptcy court, this Court prefers, but does not require, that counsel seek formal approval of their employment at the outset of the bankruptcy case. See In re Goines, 465 B.R. 704, 708 (Bankr. N.D. Ga. 2012) (holding that counsel representing a Chapter 13 debtor in a civil action must have his employment approved pursuant to 11 U.S.C. § 327); contra In re Scott, 531 B.R. 640, 645-46 (Bankr. N.D. Miss. 2015) (disagreeing with Goines, holding that a Chapter 13 debtor's litigation counsel need not have his employment approved pursuant to 11 U.S.C. § 327). In this case, at a minimum, Debtor's bankruptcy counsel should have made sure that both the Debtor and his litigation counsel understood their obligations under the Chapter 13 Plan.

-10-

Second, once the Trustee began making inquiry about the suit, Debtor's counsel should have made the Debtor aware of his obligation to provide the Trustee with the requested information. Moreover, Debtor's bankruptcy counsel should be in communication with their client and with litigation counsel. Litigation counsel should have timely responded to the Trustee's requests for information. Even if litigation counsel did not understand the intricacies of the Bankruptcy Code or the specifics of the Debtor's Plan, simple professionalism dictates that they should have responded to the Trustee in a timely manner.

Third, bankruptcy counsel is responsible for adequately supervising those working for him. If an associate is permitted to give advice in a matter, counsel is responsible for the advice given by his associate. A lawyer may not come into bankruptcy court, represent a client and take a fee and yet absolve himself from responsibility for the actions of his staff.

### III. CONCLUSION

When the proceeds of the civil action were sent to the Debtor, and dissipated by him, property of the estate was converted in violation of the law and contrary to the requirements of the Debtor's Chapter 13 Plan. The Court finds that the Debtor is sufficiently culpable to result in the dismissal of his case, with prejudice, and with a five-year injunction against refiling. The Court will conduct a separate hearing to determine the question of sanctions regarding the other lawyers. The Court will enter separate orders dismissing this case, with prejudice, and with an injunction against refiling, and requiring Debtor's lawyers to appear and show cause why sanctions should not be imposed.

July 16, 2015.

                                              William R. Sawyer
                                              United States Bankruptcy Judge

cc:     Charles M. Ingrum
        Jarret Layson
        John T. Martin
        Samuel W. Oates
        J. Franklin Burns
        Shannon Rolen
        Billy Jack Smith, II

-12-

Case 11-81204   Doc 43   Filed 07/16/15   Entered 07/16/15 16:17:37   Desc Main
Document    Page 12 of 12