# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re
                                          Case No. 11-81204-WRS
                                          Chapter 13

BILLY JACK SMITH II,

        Debtor

## MEMORANDUM OPINION

"What we've got here is failure to communicate."[1]  Strother Martin uttered those words to Paul Newman in the movie *Cool Hand Luke*, but he could just as easily have said them about the attorneys involved in this case.  A systematic breakdown in communication occurred between the Trustee, the Debtor, the Debtor's bankruptcy attorneys, and the Debtor's worker's compensation attorneys.  The results of this communication breakdown were multiple violations of the Bankruptcy Code and Rules, a violation of an order of this Court, and the conversion of roughly $30,000 of property of the estate.  This opinion will discuss what went wrong and will determine the extent to which the attorneys involved will be held responsible.

## I.  FACTS & PROCEDURAL HISTORY

### A.  The Worker's Compensation Claim

Billy Jack Smith, II, ("Smith"), a policeman in Columbus, Georgia who lives in Alabama, was injured on the job in June 2010.  (Doc. 55, ¶ 5).  In March 2011, Smith approached John T. Martin ("Martin"), an attorney licensed to practice in Alabama and Georgia, about filing a worker's compensation claim.  (Doc. 55, ¶ 5).  Martin referred Smith to Samuel W. Oates, Jr. ("Oates"), a former Georgia attorney who specialized in worker's compensation claims, pursuant

---

[1]  COOL HAND LUKE (Jalem Productions 1967).

to a fee-splitting arrangement they had. Oates filed a worker's compensation claim in Georgia on behalf of Smith.

## B. The Bankruptcy Plan

On August 11, 2011, Smith filed this Chapter 13 bankruptcy case. (Doc. 1). His bankruptcy attorneys are Charles M. Ingrum, Jr. ("Ingrum"), and Jarret A. Layson ("Layson").[2] In his Chapter 13 plan, which was prepared by his Bankruptcy Attorneys, Smith proposed to pay all of his worker's compensation proceeds into the estate for the benefit of his unsecured creditors. (Doc. 15). The language of this plan specifically stated:

> Any amount recovered in the Civil Suit, less allowable attorney
>
> fees and cost, over and above the exemptions allowed by the
>
> debtor(s) under Ala. Code Title 6-10-6 will be turned over to the
>
> Chapter 13 Trustee to be paid into the plan.

(Doc. 15, ¶ 14(b)). The only lawsuit of any kind that was listed in Smith's Schedule B was his worker's compensation suit. (Doc. 1, p. 15). Aside from the potential worker's compensation proceeds, Smith's plan did not provide for any payment to unsecured creditors, whose claims totaled roughly $41,000. (Docs. 15 & 59). The Court confirmed this plan on November 18, 2011. (Doc. 20). Up to that point, the Bankruptcy Attorneys had not listed Smith's worker's compensation attorneys as creditors, had not informed them of the terms of Smith's Chapter 13

---

[2] For the sake of convenience, the Court will refer to Ingrum and Layson collectively as the "Bankruptcy Attorneys."

Case 11-81204    Doc 63    Filed 10/05/15    Entered 10/05/15 13:09:40    Desc Main
Document    Page 2 of 17

plan, had not made any effort to notify them of the bankruptcy, and apparently had not even ascertained their identities or whereabouts.

### C. The Communication Gap

On December 20, 2011, the Trustee emailed Ingrum, requesting the name and address of Smith's worker's compensation lawyer. (Doc. 46, p. 1). Two days later, Smith disclosed the identity of Martin and stated his address was 233 12th St., Columbus, GA 31901. (Doc. 54, ¶ 5). On December 29, 2011, the Trustee mailed Martin a letter at that address notifying him of his obligation to seek the Court's approval of his employment for the worker's compensation suit and notifying him that any proceeds should be paid to the Trustee. (Doc. 46, p. 1 & Ex. 1); *see also* 11 U.S.C. § 327(e). The Trustee received no reply to this letter.

In January 2012, Oates retired from his law practice and referred Smith's worker's compensation claim to J. Franklin Burns ("Burns"), another worker's compensation attorney in Georgia. (Doc. 46, Ex. 13; Doc. 55, ¶ 8). Smith signed an employment contract with Burns on May 16, 2012, and Burns apparently assigned Smith's case to associate attorney Shannon D. Rolen ("Rolen"). Apparently, neither Burns nor Rolen checked on PACER to see if Smith was in bankruptcy, and Smith did not disclose to them that he was in bankruptcy.

Meanwhile, the Trustee's efforts to contact Martin continued to be frustrated. The Trustee sent follow-up letters to Martin at the 233 12th St. address on March 29, 2012 and on July 3, 2012, and received no reply to either one. (Doc. 46, p. 1 & Ex. 2 & 3). On February 8, 2013, the Trustee mailed a letter to Smith and sent copies to Ingrum and Martin, requesting an update on the worker's compensation suit. (Doc. 46, p. 2 & Ex. 4). Smith informed Layson that his

3

worker's compensation suit was still pending, and Layson told Smith to tell his worker's compensation attorney to file his paperwork with the Court. (Doc. 54, ¶ 8).

On February 22, 2013, the Post Office returned the copy of the February 8 letter that had been sent to Martin, and marked the 233 12th St. address as "insufficient." (Doc. 46, p. 2). The Trustee called Martin's office, and Martin's paralegal claimed none of the previous letters had been received, and provided the Trustee a new address of P.O. Box 1436.[3] (Doc. 46, p. 2). The new address did not improve Martin's responsiveness. The Trustee sent letters to Martin at the P.O. Box 1436 address on February 22, May 22, and December 2, 2013. (Doc. 46, p. 2 & Ex. 5-7). Martin did not respond to any of these letters; instead, he simply "relied" on Burns to seek approval of any settlement. (Doc. 55, ¶ 13). During this period, the Trustee was unaware of the existence of Burns and Rolen, and Rolen was unaware of the bankruptcy.

Rolen first became aware of Smith's bankruptcy in February 2014, when Smith mentioned it and asked her how much of any settlement proceeds he would be required to pay to his creditors. (Doc. 50, p. 1). Rolen referred Smith to his Bankruptcy Attorneys. (Doc. 50, p. 1). After Smith met with Layson on February 14, 2014, he declined to settle his worker's compensation case for $30,000 at that time. (Doc. 50, p. 1; Doc. 54, ¶ 12). On April 29, 2014, the Georgia Worker's Compensation Board entered a consent order in which Smith was paid arrears on a Permanent Partial Disability rating pursuant to GA. CODE § 34-9-263. (Doc. 50, Ex. 3).

---

[3] This is the mailing address currently listed on Martin's website, as well as the websites of the Georgia and Alabama State Bars.

## D. The Trustee Learns of Rolen

On August 5, 2014, having received no update from Martin despite sending him seven letters, the Trustee filed a "Motion to Examine Debtor's Transactions with Attorney and Motion to Examine Attorney's Fees" pursuant to 11 U.S.C. § 329. (Doc. 28). The Bankruptcy Attorneys sent a copy of the motion to Smith and told him he needed to get his worker's compensation attorneys in touch with the Trustee. (Doc. 54, ¶ 15). After Smith called the Trustee and disclosed the existence of Rolen, the Trustee sent Rolen a letter on August 13, 2014, detailing her obligations to seek the Court's approval of her employment and of any settlement, as well as her obligation to pay any settlement proceeds into the estate. (Doc. 46, p. 2 & Ex. 8).

Rolen did not respond to the Trustee. (Doc. 46, p. 2). Instead, she called Layson "for help" in preparing the application for approval of her employment on August 19, 2014. (Doc. 50, p. 3). Layson informed Rolen that he would not prepare her application for her, and referred her to the Trustee's website for the proper forms. (Doc. 50, p. 3; Doc. 54, ¶ 19). Rolen prepared her application for employment and emailed it to Layson on August 27, 2014 so that he could file it for her because she did not have a PACER account. (Doc. 50, p. 3 & Ex. 4; Doc. 54, ¶ 20 & Ex. A). Importantly, Rolen acknowledged in the last paragraph of her application for employment that she would need to seek the Court's approval of any settlement and of her fees. (Doc. 50, Ex. 4).

On August 28, 2014, Martin communicated with the Trustee for the first time. (Doc. 46, p. 3 & Ex. 9). He disclosed Oates's past association and retirement, as well as Burns' and

5

Rolen's associations. Martin acknowledged that he and Burns were aware of Smith's bankruptcy, and that he was aware of the obligation to seek approval of any settlement. (Doc. 46, Ex. 9).

On September 9, 2014 Layson emailed Rolen, saying he "asked the Trustee" about filing her application for employment on her behalf and that if he did that the Trustee would ask him to withdraw it. Layson also said that the Trustee recommended that Rolen mail the application for employment to the clerk's office. (Doc. 54, ¶ 21 & Ex. B). Though Rolen asserts that she never received this email (Doc. 50, p. 3), it was sent to the email address she has listed on Burns' website and on the website of the Georgia State Bar. Rolen did not mail or otherwise file her application for employment with the Court, and Layson did not file it for her.

### E. The Settlement and the Conversion

In late 2014, Smith decided to try settling his worker's compensation claim. (Doc. 50, p. 3-4). He was nearing completion of his monthly payments under his Chapter 13 plan, and told Rolen that he would have no further obligation under his plan. Rolen advised Smith to consult with his Bankruptcy Attorneys, but did not verify this herself. (Doc. 50, p. 3-4). On January 5, 2015, Smith agreed to settle his worker's compensation claim for $30,000. (Doc. 50, p. 4).

On January 22, 2015, Smith called Layson and asked why he had not received a discharge, and Layson explained the discharge process to him. (Doc. 54, ¶ 22). Smith did not mention his worker's compensation claim, and Layson apparently did not ask for an update on it. (Doc. 54, ¶ 22).

On January 29, 2015, the Georgia Worker's Compensation Board approved Smith's settlement. (Doc. 50, p. 4 & Ex. 5). The Board distributed the settlement proceeds to Rolen on

6

February 3, 2015. She retained $5,025.00 in attorney's fees on behalf of herself and Burns, paid

Oates $2,475.00 in fees pursuant to their fee-splitting arrangement, and reimbursed their

combined costs of $100.71. Rolen disbursed the remaining proceeds to Smith in the amount of

$22,399.29. (Doc. 50, p. 4 & Ex. 5). She did not file a motion to approve the settlement or an

application to approve her attorney's fees with the Court.

On February 6, 2015, the Trustee's paralegal called Martin, asking for an update on

Smith's worker's compensation claim. (Doc. 46, p. 2). Martin emailed his paralegal and copied

the Trustee. (Doc. 46, p. 2 & Ex. 10). When Martin's paralegal could provide no update, the

Trustee's paralegal called Rolen on February 27, 2015. (Doc. 46, p. 2-3). Rolen informed the

Trustee of the settlement and disbursement, and learned that Layson had not filed her application

for employment. (Doc. 46, p. 3; Doc. 50, p. 4). On March 10, 2015, the Trustee filed another

"Motion to Examine the Debtor's Transactions with Attorneys and Motion to Examine

Attorneys' Fees," and also filed a motion to dismiss Smith's bankruptcy case. (Docs. 31, 32).

On April 6, 2015, Ingrum called Smith, who informed him of the settlement of the

worker's compensation suit. (Doc. 54, ¶ 24). The Bankruptcy Attorneys amended Smith's

Schedules B and C to value Smith's worker's compensation suit at $22,000 and to claim all of it

as exempt under ALA. CODE § 25-5-86, contrary to his confirmed plan. (Doc. 34). The Court

heard the Trustee's motions on April 8, 2015. Ingrum offered no useful information and the

Court continued the hearing to May 13, 2015. The Trustee objected to Smith's amended

Schedule C. (Doc. 35).

At the May 13, 2015 hearing, Smith heard testimony from Smith and his worker's

compensation attorneys. Smith testified that Layson told him he had completed his monthly plan

Case 11-81204   Doc 63   Filed 10/05/15   Entered 10/05/15 13:09:40   Desc Main
Document      Page 7 of 17

payments and that he was under the assumption he had no more obligations under the plan.

(Doc. 59, p. 13). He also testified that he only had about $1,000 of the settlement proceeds left.

(Doc. 59, p. 14). The Court did not believe him, and dismissed his case with prejudice under 11

U.S.C. § 349(a) and with a five-year injunction against refiling bankruptcy. In re Smith, 536

B.R. 478 (Bankr. M.D. Ala. 2015). The Court also ordered the attorneys to show cause why

sanctions should not be imposed. (Doc. 44). The Trustee filed a Report and Recommendation

(Doc. 46), and the attorneys filed responses and belated applications to approve their

employments, the settlement, and their fees. (Docs. 47, 48, 49, 50, 54, 55, 56). A hearing was

held on September 16, 2015, at which the Court heard testimony from the Trustee and each of the

attorneys involved.


## II.  DISCUSSION

The Court has jurisdiction under 28 U.S.C. § 1334(a) and 11 U.S.C. § 105(a). Green

Point Credit, LLC, v. McLean (In re McLean), 794 F.3d 1313, 1319 (11th Cir. 2015). This is a

core proceeding. 28 U.S.C. § 157(b)(2)(A). This is a final order.

Section 105(a) of the Bankruptcy Code provides that:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title. No
> provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary or
> appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a). Under § 105(a), the Court "may impose sanctions if a party violates a court

order or rule." In re Evergreen Sec., Ltd., 570 F.3d 1257, 1273 (11th Cir. 2009); *see also*

McLean, 794 F.3d at 1319. An order confirming a Chapter 13 plan binds the debtor to the provisions of that plan. 11 U.S.C. § 1327(a). It goes without saying that it also binds the debtor's attorneys, whether they are directly involved in the bankruptcy or not, so long as they have notice of the bankruptcy.

In addition to their obligations under a bankruptcy court's confirmation order, a debtor's attorneys also have obligations under the Bankruptcy Code and Rules. A Chapter 13 debtor's bankruptcy attorney may charge no more for representing the debtor's interests than is reasonable "based on a consideration of the benefit and necessity of such services to the debtor. . . ." 11 U.S.C § 330(a)(4)(B). Likewise, it is a good idea for an attorney representing a bankruptcy debtor in a civil suit to seek the bankruptcy court's approval of his or her employment under 11 U.S.C. § 327(e) and FED. R. BANKR. P. 2014(a), seek the bankruptcy court's approval of any settlement under FED. R. BANKR. P. 9019(a), and seek the bankruptcy court's approval of his or her compensation under 11 U.S.C. § 330(a)(1) and FED. R. BANKR. P. 2016(a).[4] *See also*

---

[4] There is a significant difference between cases under Chapter 7 and cases under Chapter 13. In cases under Chapter 7, a cause of action is property of the estate and, once a petition is filed, is under the sole control of the Chapter 7 trustee. 11 U.S.C. § 704(a)(1); In re Jones, 2013 WL 1558088, *2 (Bankr. M.D. Ala. Apr. 12, 2013). On the other hand, in a case under Chapter 13, the debtor remains in control of his or her property. 11 U.S.C. §§ 1302 and 1303. Because the trustee in a case under Chapter 13 does not take control of property of the estate and liquidate it for the benefit of creditors, one may argue that civil attorneys whose clients are in Chapter 13 bankruptcy are not strictly bound by 11 U.S.C. §§ 327 and 330. The Court need not resolve that issue here, however, because the attorneys' failure to communicate with each other or with the Trustee directly led to their violation of the Court's confirmation order. Suffice it to say, the Court strongly prefers that all civil attorneys, including those representing Chapter 13 debtors, follow the steps set forth in 11 U.S.C. §§ 327 and 330, and in Bankruptcy Rules 2014, 2016, and 9019. Had the worker's compensation attorneys in this case done so, all of this would have been prevented.

William R. Sawyer, *Civil Actions and Bankruptcy Proceedings: A Collision of Two Very Different Worlds*, 68 Ala. Lawyer 290, 293 (2007).

The Court will discuss the roles of each of Smith's attorneys in the preceding events and determine the extent to which each is responsible for what has happened.

### The Bankruptcy Attorneys: Charles M. Ingrum, Jr. and Jarret A. Layson

When an attorney takes a civil case on a contingent basis or is otherwise owed money by a client for his or her services, that attorney becomes a creditor of the client. Moreover, that attorney has a lien on the client's papers and money, and on all real and personal property the attorney recovers for the client. ALA. CODE § 34-3-61; GA. CODE § 15-19-14. It follows that when a debtor who has a pending civil suit files bankruptcy, the debtor's civil attorneys should be listed as creditors, and probably as secured creditors, by the debtor's bankruptcy attorney. Sawyer, *supra*, at 292-93. Doing so allows the civil attorneys to file proofs of claim in the bankruptcy for services rendered, and helps to keep them apprised of what is happening in the bankruptcy and what their obligations are. At a minimum, it provides the bankruptcy attorney some protection from accusations of impropriety in the event a civil attorney violates a bankruptcy obligation. Oates and Martin were both pre-petition creditors of Smith, but the Bankruptcy Attorneys did not list them as creditors or otherwise notify them of the bankruptcy. Worse, it is apparent from the Trustee's report that the Bankruptcy Attorneys did not even attempt to ascertain the identities of Oates and Martin until the Trustee pressed the matter. That flies in the face of professionalism and common sense.

The Bankruptcy Attorneys' lack of candor and professionalism is even more egregious upon consideration of the nature of Smith's civil suit. In both Alabama and Georgia, worker's

10

compensation proceeds are fully exempt from execution by creditors. ALA. CODE § 25-5-86(2); GA. CODE § 34-9-84. A Chapter 13 debtor may nevertheless choose not to claim the exemption and instead pay his worker's compensation proceeds into his plan. When a debtor does that, however, it is incumbent upon the debtor's bankruptcy attorney to alert the debtor's worker's compensation attorneys as to what the debtor is proposing to do; otherwise, the worker's compensation attorneys will be blindsided because they will not expecting the possibility that the worker's compensation proceeds should be paid to a third party.

The Bankruptcy Attorneys have insisted that they explained to Smith several times that he was obligated to pay any proceeds from his worker's compensation suit into his bankruptcy estate. (Doc. 54). They should also have explained that to his worker's compensation attorneys. Smith is a layman and is self-interested, and his Bankruptcy Attorneys were not entitled to simply rely on him to relay his obligations to his worker's compensation attorneys. By failing to directly notify either Martin or Oates of their obligations under Smith's confirmed plan, the Bankruptcy Attorneys placed Martin and Oates in grave risk of conversion liability and of violation of this Court's confirmation order, and left themselves and the Trustee unaware of the entry of Burns and Rolen into the worker's compensation case. Simply put, the negligence demonstrated by the Bankruptcy Attorneys set the worker's compensation attorneys up for failure.

Finally, the Bankruptcy Attorneys should have disclosed the particulars of the worker's compensation lawsuit, such as the case number and the court it was filed in, in Schedule B so that the Trustee could have located the asset. Merely listing "Worker's Compensation Lawsuit," as the Bankruptcy Attorneys did in Smith's Schedule B, is unhelpful.

11

## John T. Martin

Martin asserted in his response and at the September 16 hearing that the Trustee's first four letters to him were mailed to the wrong address. Even assuming that to be true, Martin chose to ignore at least three letters from the Trustee that were clearly mailed to the correct address. Martin's conduct in this respect was unprofessional. In addition, he simply relied on Burns and Rolen to file the necessary paperwork without bothering to send them a copy of the Trustee's letter or to inform them of the bankruptcy.

A referring attorney's responsibilities do not end upon the referral if he is actively practicing and claiming a fee for the case he has just referred. During the period between February 2013 and February 2014, Martin was the only person (besides Smith) who was aware of both the bankruptcy and of Rolen's involvement in the worker's compensation case. The Trustee and the Bankruptcy Attorneys were unaware of the existence of Rolen, and Rolen was unaware of the bankruptcy. Martin should have bridged this communication gap by responding to the Trustee's letters or by picking up the phone and speaking directly to him. Had he done so, the Trustee would have had an earlier opportunity to communicate with Rolen and to impress upon her the need to pay the worker's compensation proceeds into the bankruptcy estate. By failing to do so, Martin exacerbated the problems created by Smith's Bankruptcy Attorneys.

Martin acknowledged in his August 2014 letter to the Trustee that he was aware of his obligations under the Bankruptcy Code and Rules. However, he accepted payment of attorney's fees from the worker's compensation suit during the pendency of the bankruptcy and without notifying the Trustee or seeking the Court's approval of either his employment or his fees.

Case 11-81204   Doc 63   Filed 10/05/15   Entered 10/05/15 13:09:40   Desc Main
Document     Page 12 of 17

Moreover, he took part in a sequence of events that resulted in conversion of property of the estate.

## J. Franklin Burns and Shannon D. Rolen

When a civil attorney initiates representation of a client, it is a good idea to check PACER to see if the client or any opposing party is in bankruptcy. At a minimum, a civil attorney undertaking representation of a new client should ask the client if he is in bankruptcy. Upon learning that a client is in bankruptcy, a civil attorney should contact the client's bankruptcy attorney and the bankruptcy trustee to see if he or she has any pertinent obligations. Rolen apparently took none of these steps.

Rolen made an effort, albeit ineffective, to prepare and file her application for employment in August 2014. However, that does not excuse her failure to respond to the Trustee's letter. Rolen is also directly responsible for the conversion of the settlement proceeds because she handled the money and paid it over to Smith. In doing so, she violated the Court's order confirming Smith's plan. Rolen stated in her response that she relied on Smith's representations that his bankruptcy obligations were finished. However, as with the Bankruptcy Attorneys, Rolen was not entitled to rely on Smith's representations because he is a layman and was self-interested. She should have followed up with either the Bankruptcy Attorneys, the Trustee, or the Court to confirm that Smith had no further bankruptcy obligations. Also, Rolen should have known of her obligation to pay the settlement proceeds to the Trustee because she acknowledged it in the application for employment that she prepared. Burns, as Rolen's

13

managing attorney, is responsible for supervising her work and is vicariously liable for the converted proceeds.

### Samuel W. Oates, Jr.

Compared to the other attorneys involved in this case, Oates appears to be blameless. His representation of Smith preceded the bankruptcy so he would not have been able to discover it initially, and Oates had no continuing duty to check for bankruptcy filings; rather, Smith and his Bankruptcy Attorneys had a duty to inform Oates of the bankruptcy. They did not. When Oates retired in January 2012, he could not have known of Smith's bankruptcy and thus could not have apprised Rolen or Burns of it.

Based on the Trustee's report, it appears that Oates first learned of Smith's bankruptcy in April 2015. By that point, the settlement proceeds had been converted and dissipated. In light of all that, the Court does not hold Oates responsible for what happened in this case and will take no action against him.

## III. SANCTIONS

The offenses in this case are already completed and cannot be undone. Therefore, whatever sanctions the Court chooses to impose will necessarily be punitive. McLean, 794 F.3d at 1323. To that end, the Court notes that it ordered the Trustee to issue his Report and Recommendation together with his supporting evidence, and provided the attorneys an opportunity to respond both in filings and at the September 16 hearing. (Docs. 46, 47, 48, 49, 50,

14

54, 55, 56). In weighing the level of sanctions to impose, the Court has carefully considered the roles and transgressions of each of the attorneys involved and the extent to which they caused the conversion of estate property.

A bankruptcy attorney's obligations extend beyond shuffling papers and charging fees. The bankruptcy attorneys in this case, Ingrum and Layson, have clearly forgotten that. According to the plan they filed on behalf of Smith, the Bankruptcy Attorneys were to be paid $2,750 out of Smith's monthly plan payments. (Doc. 15). The Court concludes that disgorgement of this fee is appropriate because they did not do their job. The Bankruptcy Attorneys, Ingrum and Layson, are hereby ordered to pay the Trustee $2,750 for the benefit of Smith's unsecured creditors.

As for Martin, he did not handle the settlement proceeds and cannot be held responsible for Rolen's conversion of them. However, the Court is dismayed at his unresponsiveness to the Trustee's correspondence and the general lack of professionalism he displayed, and will disgorge his attorney's fee from Smith's worker's compensation case. Martin stated in his response that Oates is currently holding a check for $2,532.54 in attorney's fees and costs from Smith's worker's compensation suit. (Doc. 55). Martin further states that he is entitled under their fee-splitting agreement to $1,237.50. Therefore, the Court orders Martin to pay the Trustee $1,237.50 for the benefit of Smith's unsecured creditors.

At the September 16 hearing, Burns acknowledged that he and Rolen were responsible for converting Smith's settlement proceeds. Aside from the tort liability, however, Rolen's conduct was no more egregious than that of Martin and the Bankruptcy Attorneys, in that she attempted (albeit ineffectively) to comply with her bankruptcy obligations and was placed at a

15

disadvantage by their lack of professionalism. In light of that, sanctioning Burns and Rolen for the full $30,000 would be excessive relative to the sanctions imposed on Martin and the Bankruptcy Attorneys. In advance of the September 16 hearing, Rolen submitted a check to the Court for $7,500, representing both her share and Oates's share of the attorney's fees from Smith's worker's compensation case. The Court is satisfied that amount is a sufficient sanction for their role in this case.

## IV. CONCLUSION

This case is a cautionary tale that demonstrates the need for open and direct communication between a debtor's bankruptcy attorney and civil attorney. If the attorneys involved in this case, at all levels, had simply been more responsive and communicative about their intentions and respective obligations, this unpleasantness could have been avoided.

A separate order will be entered consistent with this opinion.

Done this 5th day of October, 2015.

_William R.___

United States Bankruptcy Judge

c: Charles M. Ingrum Jr., Attorney for Debtor
   John T. Martin, Esq.
   Samuel W. Oates Jr., Esq.
   J. Franklin Burns, Esq.
   Shannon D. Rolen, Esq.
   Curtis C. Reding, Trustee

16

17

Case 11-81204   Doc 63   Filed 10/05/15   Entered 10/05/15 13:09:40   Desc Main
Document       Page 17 of 17